## EUGENE, Limited, v. CHARLES ARNAO CO., Inc.

### District Court, S. D. New York.
### March 25, 1932.

Sheffield & Betts, of New York City (Edward W. Vaill, of New York City, of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, of New York City, and James F. Williamson, of Minneapolis, Minn., of counsel), for defendant.

FRANK J. COLEMAN, District Judge.

The two patents in suit are for improvements in machines for the drying of women's hair. Their use would be principally in beauty parlors where it is necessary to dry the hair expeditiously after it has been arranged on the head. The prior art had several types of such machines which employed hot air currents for the purpose, but in most of them the hot air was permitted to descend over the woman's face and neck causing her discomfort. Suter's primary purpose was to obviate this disadvantage, and his basic idea was to use a comparatively small amount of air current and to draw the warm moist air off from around the head by means of suction.

His patent, No. 1,720,301, discloses a metal casing to be placed around the portion of the head upon which the hair has been arranged. The casing has in its lower part a curved closure plate "so shaped as to approximate the form of the head of the average person" which is designed to be in close proximity to the head, leaving only a thin air space between it and the hair. This air space is designed to be practically closed by having the lower edge of the casing "make a substantially airtight contact with the head" and by the use of a suggested flexible strip of nonporous material between the edge of the casing and the head. Into this substantially closed space hot air is permitted to enter through perforations in the closure plate and is drawn off by means of suction. The air is permitted to enter the upper part of the casing and comes in contact there with a heating element from which it passes to the perforations in the closure plate. The only means disclosed for causing the current of hot air to pass through the perforations into the closed space above the head is the suction applied to that space which would naturally tend to draw air through all openings into it.

The other patent in suit, Suter, No. 1,720,302, is very similar, except that it aims to use the hot air merely for the purpose of heating the closure plate without passing through it and impinging on the hair. The heated closure plate would radiate heat through the closed air space and warm the hair; and the suction applied to that space would draw off the warm vapor.

The claims relied upon read as follows: Patent No. 1,720,301:

"3. Apparatus for drying hair comprising a casing adapted to be placed upon the human head, a heating element therein, a closure for the bottom of said casing and having perforations therein through which streams of heated air may pass to impinge upon the hair to be dried and means for producing a partial vacuum to withdraw the moisture-laden air from the space below said closure.

"4. Apparatus for drying hair comprising a casing adapted to be placed upon the human head, a heating element therein, a closure for the bottom of said casing and having perforations therein through which streams of heated air may pass to impinge upon the hair to be dried, an outlet housing mounted on said closure and means for producing a partial vacuum connected with said outlet housing to withdraw the moisture-laden air from the space below said closure."

Patent No. 1,720,302: "4. Apparatus for drying hair comprising a casing adapted to be placed upon the human head, heating elements for heating the interior thereof, a heat conductive closure for the bottom of said casing and adapted to receive heat from said heating elements, and means for producing a partial vacuum below said closure and within the hair on the head being treated."

The defendant's machine is also designed to prevent much of the warm air from flowing over the face and neck of the woman. It has a casing with a closure plate so formed as to make a recess for the woman's head without in any way making a closed space between her head and the plate. It is more in the nature of an open metal hood under which the woman may place her head without in any way closing it or impeding the free access of air from the room. The closure plate has perforations through which currents of air are forced by a fan in the casing after the air has been warmed by means of a heating device in the casing. There is an intake opening to the fan through the back of the closure plate so that as the air is forced through the perforations and on to the hair some of it is returned to the fan through this intake. In operation large currents of air are directed on to the head, but very little of it escapes from under the hood, and consequently the woman is not annoyed by its flowing over her face and neck. Some of it, however, is forced out, but most of it returns through the intake pipe in the back of the hood.

The plaintiff is not entitled to a broad construction of his claims because the prior art discloses several different types of machines employing hot air currents for drying women's hair (Jacobs, 1,260,266—1918; Krauer, 1,372,237—1921; Ruffio, 1,504,149 —1924), some of which had devices for preventing the warm air from flowing over the face and neck (Hudson, 1,485,983—1922; Casey, 1,637,035—1927), and two of which suggested suction (Dickels-Flury, Swiss patent No. 65,631, and Jacobs, supra). Furthermore, the patents were never used commercially prior to the beginning of this suit and had no effect on the trade. It is unnecessary to determine whether they are invalid for anticipation or for inoperability, but it should be recognized that they were not a great contribution to the art. The casing containing the heating element, the perforated closure plate through which currents of heated air may pass to impinge upon the hair were all to be found in prior machines. Such novelty as the patents have is in the use of a partial vacuum to withdraw the moist vapor from a closed space above the hair coupled with a rather restricted use of heated air currents.

The defendant's machine makes no use of a partial vacuum. The hoodlike recess for the head is entirely open to the atmosphere, and there is nothing in the nature of a closed space around the hair. The mere fact that the intake from the rear of the hood to the fan carries some of the air from under the hood does not in any way create a partial vacuum under the hood. In fact the air pressure under the hood is greater than that of the atmosphere, because some small amount of the hot air does come out about the face of the woman and there are holes in the back of the casing to admit air which is to take the place of that lost from under the hood. This is directly contrary to what was contemplated by the patentee when he suggested the desirability of a strip of flexible nonporous material around the edge of his casing to prevent the air from being drawn in to the closed space between the woman's head and the closure plate. Each of the claims in suit call for a "means for producing a partial vacuum," but this is not supplied by defendant's fan with its intake in the back of the closure plate, because, as I understand it, there can be no partial vacuum without a substantially inclosed space as well as an exhausting device.

The defendant's machine accomplishes a circulation of substantially the same air. It is forced out by the fan through the perfora-

tions in the closure plate and is drawn back by the same fan through the intake in the back with only a comparatively small amount of it lost over the face of the woman. This idea is not disclosed nor even suggested in the patents. The testimony of the plaintiff's expert who attempted to spell it out of the specifications seemed to me entirely specious. The idea is of so much value that, if the patentee had entertained it, it is difficult to conceive of his not expressly stating it. The use of this circulation permits large streams of air to impinge on the hair contrary to the patentee's use of a comparatively small quantity, and prevents all but a little escaping over the face of the woman. It also saves the cost of reheating large amounts of air because when it returns to the fan it is still warm.

Under all the circumstances it must be concluded that there was no infringement. A decree is, therefore, directed in favor of the defendants on the merits.